DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment to appellee, William Hilt. For the reasons stated herein, this court affirms the judgment of the trial court.
The following facts are relevant to this appeal. On August 5, 1999, Craig Pfaff and his spouse[1] filed a negligence action against Pahl Ready Mix Concrete, Inc. ("Pahl") in which Pfaff alleged that he sustained serious injury due to Pahl's negligence on April 27, 1998 at the residential construction site of William Hilt ("Hilt"). Pfaff alleged his back was injured when a steel beam landed on him after an employee of Pahl's struck the steel beam with a concrete conveyor. Pfaff was an employee of Tri-State Concrete Services, another subcontractor on the construction site. Hilt was acting as the general contractor on the construction of his residence.
On May 10, 2000, Pahl filed a third-party complaint against Hilt alleging that any injuries sustained by Pfaff were the result of Hilt's negligence. On August 24, 2000, the trial court granted Hilt's motion to consolidate the case sub judice with a case filed against him by Pfaff. On October 16, 2000, Pfaff voluntarily dismissed Hilt. On November 1, 2000, Pfaff and Pahl reached a settlement of the underlying complaint in the amount of $277,000. On December 8, 2000, appellant, The Cincinnati Insurance Company ("insurer"), Pahl's insurer, filed an amended third-party complaint against Hilt, seeking contribution for the settlement with Pfaff. The insurer alleged that a carpenter subcontractor hired by Hilt created a hidden and dangerous condition when the carpenter subcontractor installed the expansion posts and I-beams and that Hilt had knowledge of this condition. The insurer also alleged that Hilt actually participated in the construction by instructing and permitting the creation of this hidden and dangerous condition; that Hilt actively participated in the carpenter subcontractor's performance by exerting control over the place of employment and by retaining control over the carpenter subcontractor's performance; and that Hilt violated R.C. 4101.11 and R.C. 4101.12 by failing to furnish a safe workplace for Pahl and Pfaff.
On March 9, 2001, the trial court granted a motion for summary judgment filed by Hilt, finding that there was no evidence that Hilt was aware of the dangerous condition and also finding that there was no evidence that Hilt directed or exercised control over the carpenter subcontractor's work activities or that Hilt actively participated in the work. This appeal arises from this judgment.[2]
The insurer sets forth the following two assignments of error:
"STATEMENT OF ASSIGNMENT OF ERROR
 "1. The trial court erred in granting Hilt's motion for summary judgment where there exist genuine issues of material fact regarding Hilt's participation in the activity which led to the injury.
 "2. The trial court applied the wrong standard by erroneously weighing the evidence and by failing to view the evidence of appellant, as the non-moving party, in a light most favorable to the appellant."
Summary judgment is an appropriate method of resolving litigation prior to trial when there are no factual issues to try. Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1, 2. The trial court's function in a summary judgment proceeding is not to determine the issues of fact, but to determine whether or not triable issues of fact exist. Fuller v. GermanMotor Sales, Inc. (1988), 51 Ohio App.3d 101, 103.
The moving party bears the burden of persuading the court that no genuine issue exists as to any material fact and that he is entitled to summary judgment. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 370. The nonmoving party may not rest on his pleadings to oppose summary judgment. The nonmoving party must produce evidence showing that there is a genuine issue for trial. State ex rel.Burnes v. Athens Cty. Clerk of Courts (1998), 83 Ohio St.3d 523, 524. Summary judgment is appropriate if, pursuant to Civ.R. 56(C), these requirements have been met:
 "* * * there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * * "
Generally, issues of witness credibility are outside the scope of the summary judgment proceeding. Perez v. Scripps-Howard Broadcasting Co. (1988), 35 Ohio St.3d 215, 218-219. If an issue raised in the motion for summary judgment must be resolved by determining the credibility of the witness or witnesses in question, the resolution of the issue should be done by the trier of fact who has the opportunity to observe the demeanor of each witness. Killilea v. Sears, Roebuck Co. (1985),27 Ohio App.3d 163, 167. Thus, where the evidence submitted in support of and in opposition to the motion for summary judgment involves conflicting testimony, by way of affidavit or otherwise, relating to a dispositive fact, summary judgment should not be employed to resolve those conflicts. Id.
In reviewing the grant of summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
In its first assignment of error, the insurer argues that the trial court erred in granting summary judgment to Hilt as Hilt breached his duty of care to Pfaff in his capacity as a property owner and in his capacity as a general contractor because of Hilt's active participation in the carpenter subcontractor's work activities. This court finds no merit in this assignment of error.
Pursuant to R.C. 4101.11, an employer owes a duty of care to employees and frequenters, including employees of other companies. The relevant part of the statute states:
 "Every employer shall furnish * * * a place of employment which shall be safe for the employees therein and for frequenters * * * [and] shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."
However, "[t]he duty to frequenters of places of employment, set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." Eicher v.United States Steel Corp. (1987), 32 Ohio St.3d 248, syllabus. Instead, the primary responsibility for protecting such an employee lies with his employer. Id., at 250. In Wellman v. Edison Ohio Gas Co. (1953),160 Ohio St. 103, paragraphs one and two of the syllabus, the Ohio Supreme Court held:
 "Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one * * * [of the] contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.
 "One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance."
There is, however, an exception to the rule of nonliability established by Wellman and Eicher. "One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Hirschbach v. Cincinnati Gas Elec. (1983), 6 Ohio St.3d 206, syllabus. Active participation "means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury." Bondv. Howard Corp. (1995), 72 Ohio St.3d 332, 337. "A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." Cafferkey v. Turner Constr. Co. (1986),21 Ohio St.3d 110, syllabus. Thus, active participation means more than supervising or coordinating. Id. The employer must exercise control over the work activities or retain control over a critical variable in the workplace before it can be held liable to the independent contractor's employees. Sopkovich v. Ohio Edison Co. (1998),81 Ohio St.3d 628, 643.
There is no question that a construction site is inherently a dangerous setting. See, Bond, supra, 72 Ohio St.3d at 336. "A subcontractor who works at a construction site is engaged in inherently dangerous work."Michaels v. Ford Motor Co. (1995), 72 Ohio St.3d 475, 478, fn. 4.
The trial court granted Hilt's motion for summary judgment on a finding that there was no evidence that Hilt directed the activity which resulted in Pfaff's injury and/or gave or denied permission for the critical acts that led to Pfaff's injury. This court agrees. Hilt did not actively participate in the work of his subcontractors. Hilt did not direct the activities of the carpenter subcontractor or his employees and Hilt did not give or deny permission to the carpenter subcontractor as to how to place the steel beams. Similarly, Hilt did not actively participate in the work of the other subcontractors, Pahl or Tri-State. Hilt did not direct their activities, nor did he give or deny permission to any employee as to how to move the concrete conveyer which struck the steel beam which hit and injured Pfaff. As this court noted recently in Wyczalek v. RoweConstr. Servs. Co., Inc. (Dec. 21, 2001), Erie App. No. E-00-059, unreported, in discussing the liability of an owner and/or general contractor on a construction site, the injured individual must present evidence of direction of the critical act or evidence of control of the critical aspect of the work environment that led to the injury. In other words, evidence of the control of the method or means in which an act is done must be presented. See, also, Gross v. Western-Southern Life Ins.Co. (1993), 85 Ohio App.3d 662, 670 ("* * * active participation requires `some direct involvement in the work of the subcontractor * * * such as instructing a subcontractor as to "how" to perform certain work rather than just "where" and "when" to perform the work.'")
In the case sub judice, Hilt's role was merely to serve as the overall construction manager, and his functions were supervisory in nature. Thus, the trial court did not err in granting summary judgment to Hilt.
Accordingly, appellant's first assignment of error is found not well-taken.
In its second assignment of error, the insurer argues that the trial court erred in impermissibly weighing the evidence in reaching its decision to grant summary judgment. This court finds no merit in this assignment of error.
In O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph two of the syllabus, the Ohio Supreme Court stated:
 "The fact that a question of law involves a consideration of the facts or the evidence, does not turn it into a question of fact or raise a factual issue; nor does that consideration involve the court in weighing the evidence or passing upon its credibility."
To grant summary judgment, the trial court had to determine whether or not Hilt actively participated in the subcontractor's work; in the words, the trial court had to determine whether Hilt directed the activity which resulted in Pfaff's injury and/or gave or denied permission for the critical acts that led to Pfaff's injury. In order to determine whether Hilt actively participated in the subcontractor's work, the trial court had to consider the evidence of Hilt's participation; the trial court also had to consider the evidence of the activity which resulted in Pfaff's injury.
In this assignment of error, the insurer argues that the trial court did not consider all the evidence presented to show that Hilt actively participated in the subcontractor's work. The insurer argues certain points of evidence to show that Hilt actively participated in the subcontractor's work. However, the insurer overlooks that there was no evidence that Hilt actively participated in either the placing of the steel beams or in the pouring of the concrete. The pouring of the concrete, during which the concrete conveyer hit a steel beam which in turn hit Pfaff, was the critical act that led to Pfaff's injury. Upon a thorough review of the entire record in this case, this court concludes that the trial court did not err by impermissibly weighing the evidence in reaching its decision to grant summary judgment as there was no evidence that Hilt actively participated in either the placing of the steel beams or in the pouring of the concrete.
Accordingly, appellant's second assignment of error is found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., JUDGES CONCUR.
[1] For simplicity, we shall refer to the plaintiffs in the singular.
[2] On March 28, 2001, the insurer filed a notice of appeal. On April 6, 2001, this court dismissed the appeal as the order appealed from was not a final and appealable order as the judgment did not dispose of all the claims between the parties and the judgment did not contain a determination that there was no just reason for delay. The appeal was re-filed On June 18, 2001, following a dismissal of an outstanding cross-claim.